AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF TEXAS

United States of America
v.
01 Victor Alfonso Bercenas-Chacon (1997) MX
02 Adrian Cantu-Gegollado (1988) MX
03 Edgar Eduardo Medina-Garza (1989) MX
04 Angel Emmanuel Guardiola-Puente (1988) MX

*Defendant(s)*

Case No. M-18-0721-M

United States Courts
Southern District of Texas
FILED

*April 08, 2018*

David J. Bradley, Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 4/7/2018 in the county of Hidalgo in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 846<br>21 USC 841 | Conspiracy to Possess with the Intent to Distribute and Possession with Intent to Distribute Marijuana, approximately 105.000 kilograms, a schedule I controlled substance. |

This criminal complaint is based on these facts:

(See Attachment I).

☑ Continued on the attached sheet.

*Complainant's signature*

Matthew Dolengowski, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/8/2018

City and state: McAllen, Texas

*Judge's signature*

J. Scott Hacker, US Magistrate Judge
*Printed name and title*

## ATTACHMENT I

1. On April 7, 2018, at approximately 2:45 a.m., U.S. Border Patrol (USBP) agents in Rio Grande City, Texas were conducting line watch operation. USBP agents observed subjects carrying four bundles of possible narcotics and began video recording them. Agents responded and observed four individuals drop the bundles and run south towards the Rio Grande River. Agents recovered all four bundles and maintained visual of the subjects as they attempted to flee. Agents arrested four subjects within approximately 60 yards from where the four bundles were located. The four subjects were later identified as Edgar MEDINA-Garza, Adrian CANTU-Degollado, Angel GUARDIOLA-Puente, and Victor BARCENAS-Chacon. All four defendants are Mexican nationals that are illegally present in the United States.

2. USBP agents processed the four bundles of marijuana, which weighed approximately 105 kilograms. USBP agents also conducted a marijuana field test that tested positive for characteristics of marijuana.

3. At approximately 9:01 a.m., DEA Special Agents initiated a recorded interview of MEDINA. MEDINA waived his rights through written and verbal consent and agreed to be interviewed by agents. MEDINA stated that he is a Paisa gang member that has previously been arrested for smuggling narcotics. MEDINA stated that earlier in the evening he illegally entered the United States by crossing the Rio Grande River in a raft. MEDINA stated that four bundles of marijuana also crossed the Rio Grande River on a raft and that MEDINA carried one of the bundles of marijuana. MEDINA stated that he carried the bundle so "the cartel" would waive his crossing fee of $500.00 USC. MEDINA stated that he observed CANTU, GUARDIOLA, and BARCENAS all carrying a bundle of marijuana earlier in the evening. MEDINA stated that he knew he was smuggling marijuana.

4. At approximately 9:44 a.m., DEA Special Agents initiated a recorded interview of CANTU. CANTU waived his rights through written and verbal consent and agreed to be interviewed by agents. CANTU stated that he is a Paisa gang member that has previously been arrested for possession of marijuana. CANTU stated that earlier in the evening he illegally entered the United States by crossing the Rio Grande River in a raft. CANTU stated that four bundles of marijuana also crossed the Rio Grande River on a raft and that CANTU carried one of the bundles of marijuana. CANTU originally stated that he was going to be paid $300.00 USC for crossing the marijuana. CANTU stated that MEDINA, GUARDIOLA, and BARCENAS were also all going to receive $300.00 USC for crossing the marijuana. CANTU stated that he observed MEDINA, GUARDIOLA, and BARCENAS all carrying a bundle of

marijuana earlier in the evening. MEDINA stated that he knew he was smuggling marijuana.

5. At approximately 10:18 a.m., DEA Special Agents initiated a recorded interview of BARCENAS. BARCENAS waived his rights through written and verbal consent and agreed to be interviewed by agents. BARCENAS stated that earlier in the evening he illegally entered the United States by crossing the Rio Grande River in a raft. BARCENAS stated that four bundles of marijuana also crossed the Rio Grande River on a raft and that BARCENAS carried one of the bundles of marijuana. BARCENAS stated that he was going to received $300.00 USC for transporting the bundle of marijuana. BARCENAS stated that CANTU, MEDINA, and GUARDIOLA were also going to be paid $300.00 USC for crossing the marijuana. BARCENAS stated that he observed CANTU, GUARDIOLA, and MEDINA all carrying a bundle of marijuana earlier in the evening. MEDINA stated that he knew he was smuggling marijuana.

6. At approximately 10:38 a.m., DEA Special Agents initiated a recorded interview of GUARDIOLA. GUARDIOLA waived his rights through written and verbal consent and agreed to be interviewed by agents. GUARDIOLA stated that he has been arrested on two previous occasions for transporting marijuana. GUARDIOLA stated that earlier in the evening he illegally entered the United States by crossing the Rio Grande River in a raft. GUARDIOLA stated that four bundles of marijuana also crossed the Rio Grande River on a raft and that GUARDIOLA carried one of the bundles of marijuana. GUARDIOLA stated that he carried the bundle so "the cartel" would waive his crossing fee of $300.00 USC. GUARDIOLA stated that he observed CANTU, MEDINA, and BARCENAS all carrying a bundle of marijuana earlier in the evening. GUARDIOLA stated that he knew he was smuggling marijuana.